UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-CR-97 (NEB/BRT)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LA VANG,

    Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and La Vang (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.   **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Obtaining a Controlled Substance by Fraud, in violation of 21 U.S.C. §§ 843(a)(3) and 843(d)(1).

2.   **Factual Basis**. The defendant agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

Beginning in or about April 2018 and continuing through August 2, 2018, the defendant knowingly and intentionally obtained controlled substances, including oxycodone and hydrocodone, by misrepresentation, fraud, deception, and subterfuge. In

1



particular, in or about April 2018, defendant's employer, Lifesprk Home Care, assigned defendant to work as a home healthcare nurse for L.B. in Columbia Heights, Minnesota. L.B. was an elderly woman in her 80s recovering from multiple surgeries and prescribed controlled substance medications for her pain. On or about April 25, 2018, defendant stopped visiting patients in his official capacity as an employee of Lifesprk. Moreover, Lifesprk discontinued providing services to L.B. as of May 1, 2018. Nevertheless, defendant continued visiting L.B.'s home after May 1, 2018, under the guise that he continued to be a representative of Lifesprk.

As part of his duties as a home healthcare nurse, defendant was responsible for placing L.B.'s medications into weekly medication planners. The defendant obtained and acquired oxycodone and hydrocodone intended for L.B. for his own use and benefit by covertly substituting similar-looking loratadine and acetaminophen tablets in place of the oxycodone and hydrocodone tablets in the medication planners and/or pill bottles.

On August 1 and 2, 2018, police visited L.B.'s home to investigate a complaint by L.B.'s family that defendant was stealing L.B.'s medications. During these visits, police discovered a half-used bottle of oxycodone that did not contain oxycodone tablets as L.B.'s family believed, but rather contained loratadine tablets (a/k/a Clartin, an allergy medication). Police also counted the number of tablets in L.B.'s then-current bottle of prescription hydrocodone.

On August 2, 2018, police conducted surveillance on L.B.'s home and watched as defendant visited the home. Following defendant's visit, police conducted a traffic stop on defendant's vehicle. During the traffic stop, defendant falsely claimed to be working for

Lifesprk. A search of the vehicle and defendant revealed approximately 10 hydrocodone tablets (20 halves). Officers also found several empty prescription bottles for oxycodone in L.B.'s name from April-June 2018, as well as empty bottles of acetaminophen and Walgreen's brand allergy medication (loratadine 10mg). Officers returned to L.B.'s home and found that the medication in L.B.'s weekly medication planners was acetaminophen instead of hydrocodone. In a post-*Miranda* statement, defendant admitted to taking L.B.'s medication and replacing it with acetaminophen.

3. **Waiver of Trial and Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions in this case. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions in this case, and agrees to withdraw any motions currently on file. The defendant also understands that by pleading guilty he will waive all rights to a trial or appeal on the question of his guilt.

4. **Statutory Penalties**. The parties agree that Count 1 of the Indictment carries the following statutory penalties:

    a. a maximum term of 4 years imprisonment;

    b. a supervised release term no more than 1 year;

    c. a fine of up to $250,000; and

    d. a mandatory special assessment of $100;

5. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any condition of supervised release, the defendant could be

sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6. **Guideline Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

    a.    Base Offense Level. The parties agree that the base offense level for Count 1 is **8**. U.S.S.G. § 2D2.2.

    b.    Specific Offense Characteristics. The parties agree that no specific offense characteristics apply.

    c.    Vulnerable Victim. The parties agree that the defendant knew or should have known that a victim of the offense was a vulnerable victim and thus the offense level should be **increased by 2 levels**. U.S.S.G. § 3A1.1(b)(1).

    d.    Abuse of Position of Trust. The parties agree that defendant abused a position of private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, and thus the offense level should be **increased by 2 levels**. U.S.S.G. § 3B1.3.

    e.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **2-level** reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea and sentencing hearings, (ii) the defendant provides complete and truthful information to the Probation Office in the pre-sentence investigation, and (iii) the defendant commits no further acts inconsistent with acceptance of

4

responsibility. U.S.S.G. §3E1.1. The parties agree that other than as provided for herein no other Chapter 3 adjustments apply.

f. <u>Criminal History Category</u>. Based on information available at this time, the parties believe that the defendant's **criminal history category is I**. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

g. <u>Guideline Range</u>. Based on a total offense level of **10** and a criminal history category of **I**, the Sentencing Guidelines range will be **6-12 months'** imprisonment.

h. <u>Fine Range</u>. If the total offense level is 10, the fine range is **$4,000 to $40,000**. U.S.S.G. § 5E1.2(c)(3).

i. <u>Supervised Release</u>. The Sentencing Guidelines require a term of supervised release of one year for Count 1. U.S.S.G. § 5D1.2(a)(3).

j. <u>Sentencing Recommendation and Departures</u>. The parties reserve the right to make a motion for departures from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable Guidelines range, and the defendant specifically reserves the right to argue for a term of probation in lieu of a term of imprisonment.

7. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable Guideline calculations or the defendant's criminal history category are different from that stated

5

above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

8. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted. U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment at the time of sentencing.

9. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974. 5 U.S.C. §§ 552, 552A.

10. **Collateral Consequences.** The defendant understands that pleading guilty may have consequences with respect to his immigration status, including removal or deportation. The defendant understands that no one, including his attorney, the Assistant United States Attorney or the District Court, can predict to a certainty the effect of his conviction on his immigration status. Regardless of any immigration consequences that may follow from his guilty plea, even automatic removal or deportation from the United States, the defendant still wishes to plead guilty as set forth in this agreement.

11. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. The defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

Date: 5-28-19

ERICA H. MACDONALD
United States Attorney

*[signature]*

BY: NATHAN H. NELSON,
Assistant U.S. Attorney

Date: 5-28-19

*[signature]*

La Vang
Defendant

Date: 5-28-19

*[signature]*

Robert Lengeling
Counsel for Defendant

7