## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                                  No. 19-cr-97 (NEB)

    Plaintiff,

v.                                                         **DEFENDANT'S POSITION ON SENTENCING**

LA VANG,

    Defendant.

---

The Defendant, La Vang, by and through his attorney, hereby submits the following sentencing position and memorandum. Vang does not object to the advisory guideline range found in the PSR. He respectfully asks the Court to sentence him to probation of three years with randomly scheduled intermittent home detention periods at Vang's expense. In addition, he would agree he must not use or possess alcohol or non-prescribed drugs and submit to testing in a manner determined by U.S. Probation. Vang would have to maintain employment and participate in any ongoing drug treatment plan deemed necessary. There will likely be a restitution order.

This approach ensures the best long term outcomes for both Mr. Vang, the victims of his actions, and the community. A sentence with the above terms allows Vang to atone for his criminal conduct and work toward a restitution payment. More importantly, it forces Vang to be accountable for a long period of time in a way that is more sustainable.

## BACKGROUND AND FACTS

La Vang was born in Thailand in 1992, came to the United States as a small child in 1993, and became a U.S. citizen in 2015. He comes from a large family steeped in Hmong heritage. Vang has the support of his family and friends who only now recognize how powerful the grip of addiction was on him. He is described by his loved ones as loyal, a hard worker, and a care giver. This last description will strike some as hard to believe in light of what Vang is accused of doing. Yet, these descriptions remain true at the same time Vang acted in a manner wholly inconsistent with positive character traits.

Vang's childhood was marked by terrible trauma inflicted on the family by Vang's father. According to Vang, his father suffered from an addiction to opiates and methamphetamine. His father had at least three felony-level drug convictions that required prison commitments. Vang and his siblings were placed in foster care, but not all in the same place. Vang and one brother were placed together and both suffered physical abuse in the foster home. As noted in the PSR, Vang lived day to day in a state of fear, stress, and depression. But, at a young age, he also watched his father rely on drugs as a coping mechanism or an escape from daily life.

Sometime around 2014, Vang was injured playing football. He was prescribed Vicodin and quickly developed an addiction. Straight away, the feeling he got from the pills was more than he could withstand. In a strange way, Vang was comforted by his drug use not only because it took away his pain, but it was also exactly what he watched his father do when Vang was growing up. Vang clearly self-medicated through the pain of his sports injury and the pain of his childhood.

By the time he was working as home health care provider, Vang had a serious drug problem. The proximity to drugs was alluring and he started seeing how far he could go to obtain some pills.  As his drug addiction escalated, so did his attempts to obtain drugs. Looking back on how far he was willing to go to get pills, Vang is entirely remorseful and heartbroken.  In discussions about the case, he says he didn't think he was hurting anyone and eventually he wasn't thinking about anyone but himself.  This acknowledgement and self-awareness of his actions is somewhat extraordinary because he doesn't give excuses. It is also the result of his attendance in drug treatment and aftercare.

Vang was originally charged in Minnesota state court and placed on conditional release.  He is subject to UA testing and supervision.  He had a positive UA in October, 2018 but remained on conditional release.  His state case is active, pending the result in the instant sentencing.

**ARGUMENT**

The appropriate sentencing methodology is as follows:

> The district court should begin "by correctly calculating the applicable Guidelines range." "[T]he Guidelines should be the starting point and the initial benchmark, but the Guidelines are not the only consideration." The district judge should allow "both parties an opportunity to argue for whatever sentence they deem appropriate," and then should consider all of the §3553 (a) factors to determine whether they support the sentence requested by a party."
> *United States v. Hill*, 552 F.3d 686, 691 (8th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 49-50, 128 S.Ct. 586 (2007)).

The courts should "continue to engage in the three-step process of first ascertaining the applicable Guidelines range, then considering any permissible departures within the Guidelines's structure, and finally, deciding whether a non-Guidelines sentence

would be more appropriate under the circumstances pursuant to §3553 (a). *United States v. Washington*, 515 F.3d 861, 866 (8th Cir. 2008). A district court has an independent obligation to exercise its discretion to craft a sentence that is sufficient, but not greater than necessary, to achieve the goals of §3553 (a). *Freeman v. United States*, 564 U.S. 522, 131 S.Ct. 2685, 2692 (2011).

Vang is not asking the Court to grant a downward departure or variance. A sentence of probation is within the Court's authority as a guideline sentence. The parsimony statement from §3553 (a) is the controlling factor in the instant matter. What is sufficient, but not greater than necessary to achieve the goals of sentencing? The recommended sentence of probation keeps Vang accountable to the Court for a lengthy amount of time with the possibility of prison if he does not comply. Vang's ultimate success is determined and measured primarily by time. The longer he complies with probation and remains sober in the community, the better his chances of avoiding relapses or recidivism.

Typically, when defendants must cope with their drug addiction while living in the community, there is a better chance of achieving success in outpatient treatment rather than completing a custodial program. In Vang's case, he already completed treatment. Now, only time will tell if he has put his addiction issues behind him. Most defendants will experience a relapse at some point in their life. Vang has not had any problems with drug testing or compliance for the past year. A prison sentence only serves as retribution and puts Vang in a high stress situation, surrounded by drug addicts who are not all

seeking a therapeutic sober life.  It diminishes the hard work he put in to complete treatment and get sober.

The victims in this case are understandably angered by Vang's conduct.  The guidelines account for this with 4 levels of enhancements.  Their feelings should not be diminished either, but perhaps tempered with a full examination of Vang's life.  What Counsel may see, but is not readily apparent to the Court, is that Vang has challenges in the area of intellectual ability and cognitive skills. Vang can thrive with a simple, well-defined probation term versus sitting in a cell block with an unstructured day.

## CONCLUSION

La Vang comes before the Court with a heavy heart because of the pain he caused his patients.  He asks the Court to recognize his struggles with drug addiction and the lasting effects of his childhood.  Vang respectfully requests a sentence of probation with randomly scheduled intermittent home detention.

              BEITO & LENGELING, P.A.

Date:___November 19, 2019_____  By _____*s/ Robert A. Lengeling*_____
                Robert A. Lengeling, #304165
                Flour Exchange Building
                310 Fourth Avenue South, Suite 1050
                Minneapolis, Minnesota  55415
                (612) 767-1618 / (612) 333-8003 fax
                rob@beitolengelinglaw.com
                ATTORNEY FOR DEFENDANT